UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. KRUGER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 04 C 5611 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner David Kruger was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and possessing a firearm that was not registered to him in the National Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). The court sentenced him to 290 months in prison as an armed career criminal under 18 U.S.C. § 924(e), and to 120 months for the § 5861 violation, with the sentences to be served concurrently. Petitioner brings this action for post-conviction relief under 28 U.S.C. § 2255, claiming that a number of his constitutional rights were violated during the trial. For the following reasons, the court denies his petition.

**FACTUAL BACKGROUND**

Evidence presented at trial established the following. On April 10, 2001, Petitioner was placed on parole after serving time in prison for a felony. (Trial Tr. vol. 2, at 255:1-2, 261:19; Sentencing Tr. at 9:1-3.) On September 1, 2001, an informant approached Chicago Police Officers Pat Thelen, George Parker, and Daniel Gorman and told them that Petitioner had a sawed-off shotgun stored in a brown bag in the bedroom of an apartment at 1015 North Pulaski. (Trial Tr. vol. 1, at 149:5-150:13, 199:16-17.) When the officers went to the apartment, Petitioner was not there, but his father provided written consent and led the officers down a hallway to a room that he identified as Petitioner's bedroom. (*Id.* at 156:19-22, 158:1-4.) The room contained a refrigerator, dresser, a bed, and a small glass table with a brown bag on it. (*Id.* at 161:21-162:3.) Officer Thelen

went straight to the brown bag, opened it, and found a Savage Arms sawed-off shotgun, approximately sixteen inches long. (*Id.* at 162:3-9.) After making sure no rounds were still in the gun, Officer Thelen continued to search the bag for ammunition or other weapons, and found Petitioner Kruger's state identification card listing Kruger's address as 1015 North Pulaski. (*Id.* at 162:9-16, 214:10-11.) Petitioner's father did not know where his son was, so the officers took the gun to the station for processing. (*Id.* at 167:16-19.) No fingerprints were found on the gun. (*Id.*, vol. 2, at 296:23-297:1.)

Five days later, on the night of September 6, 2001, Officers Thelen, Gorman, Parker, and Kathy Gerich were driving past 1015 North Pulaski and saw someone who looked like Petitioner standing outside the apartment building. (*Id.*, vol. 1, at 168:10-12, 168:24-169:3.) The officers exited the car and approached Petitioner and asked him his name; when he responded "David Kruger," the officers placed him in custody, and Officer Thelen read him his *Miranda* rights. (*Id.* at 169:6-12, 169:24-170:6.) Thelen testified, and the police report reflects, that while seated in the back of the police car, Petitioner told the officers that "he got the gun for protection for himself and his family." (*Id.* at 171:5-10.) Although the incident report makes no mention of any other statements, Officers Thelen, Gorman, and Parker testified that Petitioner also asked the officers to charge him with a misdemeanor rather than a felony; claimed that the gun didn't work anyway; and pointed out that he was not even home when the gun was found. (*Id.* at 171:13-23, 172:3-5, 219:4-7, 234:21-235:3.) Defense counsel challenged the government's ability to connect the bedroom at 1015 North Pulaski to Petitioner (*Id.*, vol. 2, at 273:21-23; *id.*, vol. 3, at 369:1-11, 372:2-11), and attacked the police testimony concerning Petitioner's alleged confession. (*Id.*, vol. 3, at 370:4-22.)

During deliberations, the jury sent back two notes to the judge. First, the jury asked to see a copy of the police report. (*Id.* at 397:1-5.) After a brief discussion with the attorneys, the court responded that the report was not submitted into evidence. (*Id.* at 397:12 – 398:18.) The jurors

later sent a second note requesting to see the shotgun. (*Id.* at 398:24-25.) The court again discussed this request with the government and defendant's counsel, then allowed the jury to keep the gun in the jury room. (*Id.* at 400:24-401:1.) Kruger's counsel waived the defendant's presence for the reading of these two notes and Kruger was not present in the courtroom when they were discussed. (*Id.* at 397:9-11.) After less than three hours of deliberation, the jury convicted Petitioner on both counts. (*Id.* at 401:9-402:5.)

On appeal, Petitioner argued that his confession was taken before he had been read his *Miranda* rights, that § 922(g) and § 5861(d) were unconstitutional for exceeding the power granted to Congress by the Constitution, that certain evidence of his living at 1015 North Pulaski was inadmissible, that the jury instructions were improper, that he should not have been sentenced as a career criminal, and that the district court should have sentenced him "downward." On appeal, his appointed counsel sought to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), believing all claims to be meritless. The Seventh Circuit agreed, granted his motion to withdraw, and dismissed the appeal. *See United States v. Kruger*, 75 Fed. App'x 514 (7th Cir. 2003).

## DISCUSSION

Petitioner seeks post-conviction relief under 28 U.S.C. § 2255. "Habeas corpus relief under [section 2255] is reserved for extraordinary situations" and requires a showing "that the district court sentenced [Petitioner] in violation of the Constitution or laws of the United States . . . ." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Petitioner has cataloged a number of complaints in the various motions and briefs he has filed in this court.[1] His claims fall into five categories: (1)

---

[1]     Petitioner has filed four documents in this court that have either amended past allegations, added new ones, attached affidavits, or responded to the government. These documents include: a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By A Person in Federal Court on August 26, 2004 (the "8/26/04 Mot."); Motion for Leave to File Motion for Discovery of Specific Files (the "1/4/05 Mot."); and Movant's First Amendment of the Section 2255 Motion on February 23, 2005 (the "2/23/05 Mot."). The government filed its sole brief on July 26, 2005 (the "Gov't Br."), to which Petitioner responded with Petitioner's Reply to Government's Response (the "12/21/05 Reply").

ineffective assistance of counsel, (2) admission of testimony in violation of the Confrontation Clause, (3) sentencing in violation of the Sixth Amendment, (4) warrantless arrest in violation of the Fourth Amendment, and (5) government misconduct. Petitioner has also asked for court-ordered discovery as to this last claim, and has requested an evidentiary hearing.

## I.     Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of trial counsel, arising out of (1) counsel's failure to pursue four witnesses identified by Petitioner, (2) counsel's failure to advise Petitioner to enter a plea agreement, and (3) counsel's waiver of Petitioner's right to be present at the reading of the jury notes. (8/26/04 Mot. at 4-4(a).)[2] Petitioner also alleges that he received ineffective assistance from his appellate counsel in failing to raise these and other issues on appeal. (2/23/05 Mot. at 5.)

The Sixth Amendment guarantees defendants the right to effective assistance of counsel in criminal prosecutions. *Prewitt*, 83 F.3d at 818. To prevail on an ineffective assistance of counsel claim, a petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Second, the petitioner must establish that he was prejudiced by counsel's inadequate representation by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gallo-Vasquez*, 402 F.3d at 798 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner bears the burden of establishing both of these elements, "as counsel is presumed effective." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). Furthermore, a court need not examine the two elements in order and may dispose of a case where no prejudice has been shown without addressing the adequacy of counsel's performance. *See*

---

2       Petitioner has, at various times, styled some of his substantive claims as ineffective assistance of counsel claims, as well. (12/21/05 Reply at 1.) The court addresses these claims below on their merits rather than as ineffective assistance claims.

*Strickland*, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

## A. Failure to Investigate Witnesses

Petitioner first asserts that counsel was ineffective for failing to interview and present four witnesses at trial. He has provided affidavits from three of his sisters–Debra Howard, Kimberly Owens, and Diane Rafear—and Ray Newsome, his father's car repairman. The affidavits assert that the gun was in the apartment while Petitioner was imprisoned, that the gun belonged to Petitioner's father, and that Petitioner's state ID was often kept in a mirror in the same room in which the gun was found. (Howard Aff. ¶ 6; Newsome Aff. ¶¶ 3-5; Owens Aff. ¶¶ 4-5; Rafear Aff. ¶¶ 5-8.) Petitioner claims he gave his attorney a list of these witnesses, but the attorney failed to "investigate, interview, or subpoena" them to testify at the trial. (2/23/05 Mot. at 2.) Three of the affidavits also assert that counsel never contacted them about testifying.[3] (Newsome Aff. ¶ 10; Owens Aff. ¶ 8; Rafear Aff. ¶ 9.) If counsel had presented these witnesses, according to Petitioner, "there is a reasonable likelihood that the trial verdict would have been different." (2/23/05 Mot. at 2.)

Attorneys owe their clients "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Washington v. Smith*, 219 F.3d 620, 631 (7th Cir. 2000) (quoting *Strickland*, 466 U.S. at 691). To successfully show

---

[3] The government attached an affidavit from Petitioner's trial attorney, Mark Kusatzky, in which he claims that Petitioner never mentioned Rafear, Newsome, or Howard. (Kusatzky Aff. ¶ 3, Attach. to Gov't Br.) Counsel's affidavit also states that he did in fact speak to Owens on April 22, 2002, and that she "stated that she did not want to get involved in [Petitioner's] case." (*Id.* ¶ 4.) He further stated that Owens did not say anything to him concerning a weapon at the 1015 North Pulaski apartment. (*Id.*)
As the government notes, there may have been strategic reasons not to subpoena Owens and force her testimony, and any strategic decisions would be entitled to deference. *Strickland*, 466 U.S. at 689. In any event, as explained below, this court need only address prejudice, so neither the affiants' credibility nor counsel's strategy require discussion.

ineffective assistance, Petitioner "has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quoting *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)) (internal quotations omitted). The court then determines "whether, under all the circumstances of this case, these alleged acts or omissions were made outside the wide range of professionally competent assistance." *Menzer*, 200 F.3d at 1003.

Petitioner's claim fails because he cannot establish prejudice. Under this prong, Petitioner must show a reasonable probability that counsel's failure to interview these witnesses affected the outcome, not just that it "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner's possession of the weapon was the only real issue at trial, as the parties had stipulated to the other elements of the two offenses. (Trial Tr. vol. 1, at 205:7-9 (stipulating that gun moved in interstate commerce); *id.* at 205:14-16 (stipulating that gun was unregistered); *id.* at 147:17-20 (stipulating to prior conviction); *see also United States v. Rogers*, 542 F.3d 197, 202 (7th Cir. 2008) (elements of § 922(g) are (1) prior felony conviction; (2) possession of a gun; (3) gun traveled in interstate commerce); *United States v. Sanders*, 520 F.3d 699, 700 (7th Cir. 2008) (elements of § 5861 are (1) knowing possession (2) of an unregistered firearm)). To establish Petitioner's constructive possession[4] of the shotgun, the government needed to establish "a nexus between the accused and the contraband, in order to distinguish the accused from a mere bystander." *United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2000). Petitioner's constructive possession of the shotgun could have been either sole or joint. *Id.*

After considering the testimony contained in the affidavits, the court concludes that they do

---

[4]     Because the petitioner was not found with the weapon in his immediate control, the government proceeded on a constructive possession theory at Kruger's trial. "Constructive possession exists when a person knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly, or through others." *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005).

not undermine the jury's finding that Petitioner "knowingly possessed a firearm." Rafear's and Howard's affidavits, if believed by a jury, would establish that Petitioner's state ID card was often wedged in a mirror "above a small dresser, between a bed and a freezer," "in the back room" of the apartment, the same room in which the gun was found. (Howard Aff. ¶ 6; Rafear Aff. ¶¶ 5-7.) It was established at trial that the apartment had two bedrooms–one was Petitioner's father's bedroom, and one was a room in the back of the apartment where the gun was found. (Trial. Tr. vol. 1, at 158:4-5.) Thus, while neither Howard nor Rafear identify the "back room" as the room where the gun was found, this is clearly the room to which they are referring. While these affidavits purportedly challenge the testimony of two police officers who claimed that they found Petitioner's ID card in a bag with the shotgun, they would in fact make little difference to the outcome. First, the affidavits are not inconsistent with the officers' testimony, as the affidavits merely indicate that the ID card was often kept on the mirror, not that it was on the mirror at the time the gun was found. Second, to the extent any inconsistency between their testimony and the police testimony could be perceived, Rafear and Howard, as Petitioner's sisters, might be less credible to a jury than independent police testimony. *See Crisp v. Duckworth*, 743 F.2d 580, 585 (7th Cir.1984) (refusing to find prejudice where, *inter alia*, "the potential witnesses were not independent"). Finally, Rafear's and Howard's testimony actually strengthen the government's position, as evidence that Petitioner consistently kept his ID card wedged in the mirror would bolster the government's argument that Kruger used the back room as his bedroom and therefore had constructive possession of the gun inside the room. Petitioner thus fails to show a reasonable probability that, if the evidence was introduced, it would have led to a different outcome.

Newsome's and Owens's affidavits similarly fail to undermine confidence in the jury's verdict. Newsome and Owens assert that the gun was in the apartment while Petitioner was in prison. Newsome claims he saw the gun sometime in December 2000, after doing some repair work on Petitioner's father's car. (Newsome Aff. ¶¶ 3-5.) Owens also claims she saw the gun in

7

the apartment "sometime in the year 2000." (Owens Aff. ¶ 4.) But this evidence does not directly refute that Petitioner confessed to keeping the gun for protective purposes, nor does it refute that the gun was found in his room. Evidence that the gun was in the apartment while Petitioner was in prison is of little significance in a case, such as this one, that proceeds under a theory of constructive possession. The government did not need to address when or how Petitioner began possessing the gun—the government only needed to prove that Petitioner was in constructive possession of the weapon upon its discovery on September 1, 2001.

Petitioner's strongest evidence presented by these affidavits may be Owens's statement that the shotgun belonged to her father. (Owens Aff. ¶ 5.) Even this, however, fails to undermine confidence in the outcome because the jury was instructed on joint constructive possession, and could well have found that Petitioner possessed the gun jointly with his father, with whom he lived. Nor does evidence that the gun had another owner rebut three police officers' testimony, confirmed in the police report, that Petitioner confessed that he kept the gun for protective purposes. Petitioner thus fails to show a reasonable probability that, with the introduction of this evidence, the result would have been different.

The cases cited by Petitioner are unavailing. *Wiggins v. Smith* concerned counsel's failure, at sentencing, to present substantial mitigating evidence of an "excruciating life history" that created "a reasonable probability that at least one juror would have struck a different balance" in determining the defendant's sentence. 539 U.S. 510, 537 (2003). Here, as noted above, there is no reasonable probability that Petitioner's new evidence would have changed the outcome, because Petitioner has not cited "powerful evidence," but rather evidence consistent with Petitioner's joint constructive possession of the weapon. Petitioner also cites *Crisp v. Duckworth*, but *Crisp* actually dismissed an inadequate representation claim. 743 F.2d at 584. In fact, *Crisp* bolsters this court's conclusion that there is no showing of sufficient prejudice here, as it held that counsel's failure to interview testifying witnesses was minimally prejudicial because the petitioner

8

failed to establish that interviewing the witnesses would have produced different testimony. *Id.*

Finally, in *United States ex rel. Hampton v. Leibach*, the court held that the petitioner was

prejudiced by his counsel's unprofessional failure to find or interview eyewitnesses who would

corroborate plaintiff's defense, and that the petitioner had been prejudiced by this failure. 347 F.3d

219, 236 (7th Cir. 2003). Unlike this case, *Hampton* was one in which the conviction rested on

eyewitness testimony. *Id.* at 256. The conviction at issue here resulted from evidence of the police

investigation, the discovery of a gun in his room, and Petitioner's confession; indeed, as noted

above, the affidavits tend to support a finding of constructive possession by establishing Petitioner's

use of the room where the gun was found.

In sum, the affidavits Petitioner has submitted do not undermine confidence in the trial

verdict. The affidavits are consistent with Petitioner's joint constructive possession of the weapon,

and confirm that Petitioner lived at the home where the gun was found. And they do nothing to

rebut the evidence that the gun was found in the same room, if not the same bag, as Petitioner's

ID, and that Petitioner had confessed that he kept the gun for protection. This first ineffective

assistance claim is thus denied for failure to show prejudice.

**B.      Failure to Enter Plea Agreement**

Petitioner next faults counsel for failing "to secure and advise that [Petitioner] should enter

into a plea-agreement" that would have avoided the sentence enhancement caused by his prior

convictions. (8/26/04 Mot. at 4.) Petitioner claims he "would have entered into such a plea

agreement instead of going to trial." (*Id.*) This claim fails because Petitioner is unable to

demonstrate that his counsel's performance was objectively unreasonable. *Strickland*, 466 U.S.

at 688. Generally, counsel has an obligation to inform clients of plea agreements proposed by the

government, and failure to do so may constitute ineffective assistance. *United States v. Golden*,

102 F.3d 936, 943 (7th Cir. 1996). Moreover, advising a client to reject a plea agreement when the

evidence of guilt is overwhelming may constitute ineffective assistance of counsel. *Almonacid v.*

*United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Petitioner, however, has provided no evidence

that the government made an offer, nor has he even alleged that an offer was made.[5]  Where there

is no evidence that a deal ever existed, counsel cannot be found to have acted unreasonably in

failing to secure one.  *See Gallo-Vasquez*, 402 F.3d at 798 (rejecting ineffective assistance claim

where petitioner produced no evidence that a plea agreement was offered).

## C.     Improper Waiver of Right to Be Present in Court

Petitioner's final ineffective assistance claim is that he did not consent to counsel's waiver

of his presence in court for the reading and discussion of the two jury inquiries.  Petitioner claims

that he was prejudiced by not being in court for these hearings.  Criminal defendants have a right

to be present at all stages of the trial, including the reading and discussion of jury notes.  *United*

*States v. Rodriguez*, 67 F.3d 1312, 1316 (7th Cir. 1995).  This right can be waived by counsel, but

the waiver must have been actually authorized by the defendant.  *Id.*  Even where the waiver was

unauthorized, a defendant's failure to be present in the courtroom generally does not constitute

reversible error where "the issue involved is not one on which counsel would be likely to consult"

the defendant, and is instead an issue about which the defendant would be "unlikely to sway" the

judge.  *United States v. Patterson*, 23 F.3d 1239, 1255 (7th Cir. 1994) (quoting *United States v.*

*Silverstein*, 732 F.2d 1338, 1348 (7th Cir. 1984)).

The court first notes that Petitioner's trial counsel claims that Kruger "verbally indicated to

me that he did not need to present [sic] in the courtroom regarding questions from the jury."

(Kusatzky Aff. ¶ 5, Attach. to Gov't Br.)  Yet even if Petitioner did not waive his right to be present,

Petitioner has failed to "affirmatively prove prejudice," as he cannot show that the constitutional

violation would "undermine confidence in the outcome" of the trial.  *Strickland*, 466 U.S. at 694.  In

this case, Petitioner has not alleged that his failure to be present had any effect on the proceedings.

Indeed, it is difficult to even imagine how his presence at these relatively brief and routine hearings

---

[5]        Kusatzky's affidavit makes no mention of plea negotiations.

could have altered the jury's guilty verdict.  The outcome of the two discussions was, first, to tell the jury they could not have a copy of the police report, an inculpatory statement not admitted in evidence, and second, to provide the jury with the gun, which had been properly admitted.  There is no reasonable probability that Petitioner's presence would have altered the court's decision on these jury requests, let alone any probability that a different decision regarding either of these notes would have changed the verdict.  In both instances, the court's decision was largely dictated by the Federal Rules of Evidence, and the parties were not in serious disagreement over the application of the rules.  *See Patterson*, 23 F.3d at 1255 (refusing to find reversible error where defendant was not present during jury deliberations and the discussion was over a "purely legal issue which depends on a clear understanding of the Federal Rules of Evidence").  Petitioner is thus unable to establish prejudice, because he cannot show that there is a reasonable probability that, but for counsel's allegedly improper waiver of his right to be present, the verdict would have been different.

### D.      Ineffectiveness of Appellate Counsel

Petitioner claims that his appellate counsel "was ineffective in failing to raise the issues" identified by Petitioner in his various § 2255 motions.  (2/23/05 Mot. at 5.)  The *Strickland* test outlined above for ineffective assistance of trial counsel–showing unreasonable conduct and prejudice–also applies to ineffective assistance claims directed at appellate counsel.  *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).  To show prejudice, the petitioner must establish that "the issue not raised 'may have resulted in a reversal of the conviction or an order for a new trial.'" *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (quoting *Winters*, 274 F.3d at 1167).  However, Petitioner has failed to establish that any of the issues he has raised in this petition would have provided a basis for the appellate court to order a reversal or a new trial.  Therefore, in the absence of a showing of prejudice, Petitioner's claim of ineffective assistance of appellate counsel fails.

## II.    Confrontation Clause

Petitioner next claims that the court violated his rights under the Sixth Amendment's Confrontation Clause by admitting impermissible hearsay testimony. *See Crawford v. Washington*, 541 U.S. 36 (2004). The officers testified at trial that they received a tip from an informant that Petitioner had a weapon in his bedroom in a brown bag. Petitioner claims that the court erred in admitting evidence of the tip from the anonymous informant–who did not testify at trial–because it violated Petitioner's right to confront the witnesses against him.[6] Petitioner's argument here relies on the recent case *Crawford v. Washington*, in which the Supreme Court held that the Confrontation Clause "require[s] that testimonial statements from witnesses absent from trial should be admitted only when the declarant is unavailable and the defendant had a prior opportunity to cross-examine." *Bintz v. Bertrand*, 403 F.3d 859, 866 (7th Cir. 2005) (citing *Crawford*, 541 U.S. at 68-69).

*Crawford*, however, was decided well after Kruger's conviction became final. In this instance, Petitioner's case became final 90 days after his appeal was affirmed, when the deadline for filing a petition for a writ of certiorari in the Supreme Court passed. SUP. CT. R. 13(1); *see also Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when . . . the time for filing a certiorari petition expires."). The Court of Appeals affirmed the verdict on August 21, 2003, so his conviction was final ninety days later, on November 19, 2003; the opinion in *Crawford* was not issued until March 8, 2004. The Supreme Court has determined that *Crawford* does not apply retroactively to convictions that had already become final prior to its decision. *Whorton v. Bockting*, 549 U.S. 406, 127 S. Ct. 1173, 1184 (2007); *see also Bintz*, 403 F.3d at 867. Petitioner is thus barred from asserting any claims under *Crawford*.

## III.    Sentencing

---

[6]    Although it is not clear that the officer's testimony concerning the informant's tip was even hearsay, *see* FED. R. EVID. 801(c) ("'Hearsay' is a statement . . . offered in evidence *to prove the truth of the matter asserted*." (emphasis added)), the government did not address this argument in its brief and the court does not reach it here. The court also expresses no opinion as to whether admitting the officers' testimony would have constituted a *Crawford* violation.

Petitioner next asserts that the court improperly considered his three sentence-enhancing prior convictions during sentencing, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). At sentencing, the court found that a prior burglary, as well as two other convictions, qualified Petitioner for sentence enhancement under 18 U.S.C. § 924(e) (defendants who violate § 922(g) and have three violent convictions "shall be fined and imprisoned not less than fifteen years"). Neither *Blakely* nor *Booker*, however, entitle Petitioner to relief; both clearly carve out prior convictions from their holdings that matters relevant to sentencing must be proven to a jury beyond a reasonable doubt. *Booker*, 543 U.S. at 244 ("Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (emphasis added)); *Blakely*, 542 U.S. at 302 (same). The court was therefore correct in making its own determination concerning Petitioner's prior convictions.

## IV.      Warrantless Arrest

Petitioner also challenges the constitutionality of his warrantless arrest, claiming that neither exigent circumstances nor probable cause justified it. Because Petitioner's Fourth Amendment claim was not raised on appeal, the claim is procedurally defaulted unless he can demonstrate either cause for his failure to raise it and prejudice resulting from that failure, or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Prewitt*, 83 F.3d at 816. Petitioner does not argue that his claims constitute evidence of actual innocence, but rather argues that the his failure to raise the claim either during trial or on appeal was the result of the ineffective assistance of his trial and appellate counsel. Like any other ineffective assistance of counsel claim, Petitioner must prove both unreasonable performance on behalf of the attorney in failing to raise the claim, and that there exists a reasonable probability that, but for counsel's failure to raise the Fourth Amendment claim, the verdict would have been different. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner's claim fails because his Fourth Amendment claim lacks any merit.  *See id.*  To arrest someone without a warrant, the police "must have probable cause, under the totality of the circumstances, to reasonably believe that a particular individual has committed a crime."  *United States v. Biggs*, 491 F.3d 616, 620 (7th Cir. 2007) (citing *United States v. Oliva*, 385 F.3d 1111, 1114 (7th Cir. 2004)).  Probable cause exists when the arresting officers "reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense."  *Biggs*, 491 F.3d at 620 (quoting *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003)).  Probable cause clearly existed here.  Police had received a tip that Petitioner had an illegal weapon in his bedroom; upon a search of the apartment they found the weapon, an illegal sawed-off shotgun, as well as his state ID; and upon seeing someone who looked like Petitioner, the officers called to him to confirm his identity, and arrested him.  Having found the gun and the ID, the police reasonably believed that Petitioner had committed a criminal offense.  Therefore, they had probable cause for the arrest.

Petitioner makes a number of other meritless assertions when discussing his Fourth Amendment claims.  First, he claims that there were no exigent circumstances around his arrest.  He may be correct, but exigent circumstances are not needed for a warrantless arrest if the officers have probable cause and the accused is provided with a judicial determination of probable cause within 48 hours of the warrantless arrest.  *Lopez v. City of Chicago*, 464 F.3d 711, 714 (7th Cir. 2006) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991)).  Petitioner has not alleged that he was denied a probable cause hearing.  Second, Petitioner asserts that the anonymous tip is in dispute and that the testifying officers perjured themselves.  He claims that the affidavits from Rafear, Newsome, Owens, and Howard undermine the officers' probable cause to arrest, but none of these affidavits refute the existence of the informant or, as noted above, even call into question the veracity of the officers' testimony.  Finally, Petitioner asserts that there was no evidence that the shotgun, which was made by Springfield Savage Arms in Massachusetts, ever

traveled in interstate commerce. This was a legal conclusion to which trial counsel wisely stipulated–a gun manufactured in Massachusetts but found in Illinois certainly traveled in interstate commerce. *See United States v. Jackson*, 479 F.3d 485, 492 (7th Cir. 2007) ("movement in interstate commerce is all the Supreme Court requires"). Petitioner therefore fails to establish any Fourth Amendment violation.

## V.      Rule 6 Discovery Request and Government Misconduct

Petitioner moves to permit discovery of police reports and other records under Rule 6 of the Rules Governing Section 2255 Proceedings, in order to investigate government misconduct surrounding the search and arrest of Petitioner. He alleges that the police have perjured themselves and attained the indictment and trial verdict by fraud, and that discovery is required to uncover this exculpatory material. Additionally, Petitioner claims that since going to prison, he spoke about his case with former Chicago police officer Joseph Miedzianowski, also incarcerated, who confirmed to him that "probable misconduct had likely occurred." (1/4/05 Mot. at 4.)

Petitioner must meet two requirements to obtain discovery under Rule 6: he must "(1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004). Good cause cannot exist "where the facts alleged do not provide a basis for relief." *Id.* (citing *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.1990)). Here, Petitioner fails to show good cause to begin discovery. His alleged proof of police corruption and perjury consist of the four affidavits and his alleged discussion with Miedzianowski. The affidavits, as noted above, do not actually call into question the officers' testimony and create no basis on which to allow discovery. Petitioner has not demonstrated that Miedzianowski possesses any personal knowledge of his case, and his mere status as a former police officer does not constitute proper cause for discovery. In the face of overwhelming evidence of Petitioner's guilt and without any credible evidence calling his conviction into question, the court denies Petitioner's request for discovery. *See Hubanks*, 392

F.3d at 934 (denying Rule 6 relief where proof submitted by Petitioner was minimal when compared with proof of his own guilt).

**VI.     Evidentiary Hearing Request**

Finally, Petitioner's request for an evidentiary hearing is denied.  28 U.S.C. § 2255 requires an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Porter v. Gramley*, 122 F.3d 351, 353 (7th Cir. 1997) (refusing to grant hearing where petitioner's "affidavits and statements [were] far from convincing").  As discussed above, the record conclusively establishes that Petitioner is not entitled to relief, and an evidentiary hearing is therefore unnecessary.

## CONCLUSION

For the foregoing reasons, Petitioner's Section 2255 petition [16] is denied.  His motion to hold the government's response in abeyance [4] is stricken as moot.

ENTER:

Dated: November 25, 2008

_____
REBECCA R. PALLMEYER
United States District Judge